**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Daquan Tyrek Brown, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No.: 2:11-cr-472-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Daquan Tyrek Brown ("Petitioner"), a federal prisoner proceeding *pro se*, moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("Motion to Vacate") (ECF No. 1801). The United States ("Government") has filed a Motion to Dismiss (ECF No. 1887), which this Court construes as a motion for summary judgment. The Court has thoroughly reviewed the record and finds the motions suitable for disposition without an evidentiary hearing. For the reasons set forth herein, the Court grants the Government's motion and, consequently, dismisses Petitioner's motion.

**BACKGROUND**

Petitioner was one of twenty-five defendants named in an eighty-five count Third Superseding Indictment. Attorney William Thrower acted as Petitioner's defense counsel.

Petitioner was charged in Counts 1, 29, 30, 48, 49, 50, and 56. Those charges related to his involvement in gang-related drug trafficking operations in Charleston, South Carolina. Count 1 charged Petitioner and his twenty-four co-defendants with engaging in a conspiracy to possess and distribute heroin, cocaine, crack cocaine, and marijuana, in violation of 21 U.S.C. § 841, and to use various locations in Charleston to make and distribute those drugs, in violation of 21 U.S.C. § 856.

Counts 29 and 30 related to the shooting of Malik Walker, a member of another area gang. According to the Government, on August 13, 2010, Walker fired shots into an apartment occupied by members of Petitioner's gang. The following day, Petitioner and several of his associates discussed Walker's attack, armed themselves, got into a car. After a lookout determined no police were nearby, they drove to a nearby neighborhood where Walker's gang had a presence. When they found Walker riding a bike on the street, the driver pulled the car alongside Walker and then one or two of the car's occupants opened fire. One of the bullets hit Walker in the abdomen, damaging his colon. Walker survived, but he underwent two surgeries and was intubated for several days after the event. Count 29 charged Petitioner and two co-defendants with discharging a firearm in connection with a crime of violence and drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Count 30 charged Petitioner and the same two co-defendants with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Both charges included language accusing Petitioner of aiding and abetting his two co-defendants in those offenses.

Counts 48, 49, and 50 related to a May 2011 search of Petitioner's apartment, in which police found cocaine, crack cocaine, a substantial amount of cash, and a loaded pistol. Based on that evidence, Count 48 charged Petitioner with possession with intent to distribute cocaine and crack cocaine, in violation of 21 U.S.C. § 841. Count 49 charged Petitioner with unlawful use and possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Last, because Petitioner had previously been convicted of a felony, Count 50 charged him with another count of felon in possession, in violation of 18 U.S.C. § 922(g)(1).

Finally, Count 56 charged Petitioner with using a telephone to facilitate several felonies relating to the distribution of heroin, in violation of 21 U.S.C. §§ 841 and 846.

On December 6, 2012, Petitioner entered into a plea agreement with the Government. He agreed to plead guilty to Counts 1, 29, 30, 48, 50, and 56, in exchange for the Government dismissing Count 49.[1] Pursuant to the plea agreement, Petitioner agreed to, *inter alia*, waive his right to contest either his conviction or his sentence in a direct appeal or in any other post-conviction action. That waiver, however, did not apply to claims of prosecutorial misconduct or ineffective assistance of counsel.

After he pled guilty, Petitioner made *pro se* requests to withdraw his guilty plea and to obtain substitute counsel. The Court denied both motions, and Thrower continued representing Petitioner.

Following Petitioner's guilty plea, a probation officer prepared a Presentence Investigation Report ("PSR"). In the PSR, the probation officer recommended a prison sentence of 308 months: 188 months for Counts 1 and 48; 120 months for Counts 30 and 50; 96 months for Count 56; and 120 months for Count 29. All sentences were to run concurrently, except that the 120 months for Count 29 had to be served consecutively. *See* 18 U.S.C. § 924(c)(1)(A).

No one objected to the PSR. On June 17, 2013, the Court adopted the PSR without change and sentenced Petitioner to the recommended 308 months in prison. Petitioner did not file a direct appeal.

On July 1, 2013, Petitioner appeared *pro se* and filed a motion to vacate. He later moved to withdraw that motion. On December 4, 2013, this Court granted the motion to withdraw and dismissed the motion without prejudice.

Petitioner filed his current Motion to Vacate on June 16, 2014. The Court ordered the Government to file a response, and on December 2, 2014, the Government filed its Motion to

_____
1. The penalty for Count 49 would have been a minimum of twenty-five years imprisonment, which would have run consecutively to any other sentences imposed. *See* 18 U.S.C. § 924(c)(1)(C)(i).

Dismiss. The Government later supplemented its motion with an additional memorandum and an affidavit from Thrower. Petitioner filed replies to both of the Government's submissions. Accordingly, this matter is now ripe for review.

## APPLICABLE LAW

Petitioner proceeds under 28 U.S.C. § 2255, which provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). On a motion to vacate, set aside, or correct a sentence pursuant to § 2255, the petitioner bears the burden of proving the grounds for collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). In deciding a § 2255 motion, the district court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## STANDARD OF REVIEW

To grant a motion for summary judgment, the court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

In applying this standard, the court is mindful that *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The liberal construction requirement, however, does not mean that the court can ignore a clear failure to allege facts that set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## ANALYSIS

Petitioner asserts two grounds for relief. Each is a claim of ineffective assistance of counsel. First, he claims Thrower provided faulty legal advice, leading Petitioner to plead guilty to charges he would otherwise have contested. Second, he contends that this Court misapplied the United States Sentencing Guidelines and that Thrower failed to object to that error.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). A meritorious ineffective-assistance claim has two elements: first, counsel's performance was deficient; and second, counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the first prong, the petitioner must show "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*. A court's evaluation of counsel's performance under this standard must be "highly deferential," so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted).

To satisfy the second prong of *Strickland*, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* That standard has several context-specific iterations. For example, where, as here, the petitioner pled guilty, he must show "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). And where, as here, the petitioner claims ineffective assistance in sentencing, he establishes prejudice by showing a reasonable probability that, but for counsel's performance, he would have received a lighter sentence than what the court imposed. *See Glover v. United States*, 531 U.S. 198, 204 (2001).

Petitioner has the burden of proving both prongs of this standard. *Smith v. North Carolina*, 528 F.2d 807, 809 (4th Cir. 1975) (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)). Thus, "'there is no reason for a court deciding an ineffective assistance claim' to resolve 'both components of the inquiry if the defendant makes an insufficient showing on one.'" *Merzbacher v. Shearin*, 706 F.3d 356, 365 (4th Cir. 2012) (quoting *Strickland*, 466 U.S. at 697).

**I.     Claim of Inaccurate Legal Advice**

Petitioner first claims that Thrower provided him several pieces of faulty legal advice that influenced his decision to plead guilty. Petitioner asserts that the inaccuracy of Thrower's advice invalidated Petitioner's guilty plea and that, had Petitioner been correctly advised, he would have pressed for a trial on several charges. After carefully reviewing Petitioner's arguments, the

6

Court concludes Petitioner has not made a colorable showing that Thrower explained the law to Petitioner incorrectly.

Petitioner attacks several specific statements Thrower made to him. First, Petitioner avers in an affidavit that he received inaccurate advice about his plea options. Petitioner states he told Thrower that he was willing to plead guilty to some counts but wanted a trial on others. Thrower responded that Petitioner had no such option; he could not obtain a trial on some charges without also proceeding to trial on the others.

Thrower does not dispute that claim. In his affidavit, Thrower explains the Government offered Petitioner a plea deal that, if Petitioner pled guilty to six of the charges against him and cooperated in the prosecution of his co-defendants, the Government would dismiss Count 49, a § 924(c) charge that carried a mandatory twenty-five year consecutive sentence. In the course of discussing that offer with Petitioner, Thrower advised him "should he not accept the plea agreement[,] then his only other option would be to go to trial. This trial would include all the counts he admitted guilt to along with the 2nd 924(c) count." (Gov't's Resp., Ex. 1, Thrower Aff., ECF No. 1998-1, at 2.)

Thrower's explanation of Petitioner's options was not inaccurate. As the affidavits and the plea agreement itself demonstrate, the Government gave Petitioner just two options: plead guilty to six counts or go to trial on seven. Thrower correctly informed Petitioner that those were his only two options. *See North Carolina v. Alford*, 400 U.S. 25, 38 n.11 (1970) ("A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court"). Thrower did not provide ineffective assistance by accurately explaining the limited plea and trial options available to Petitioner.

7

Petitioner's second argument relates to Count 1, which charged Petitioner with participating in a drug distribution conspiracy. In that count, Petitioner and twenty-four other named individuals were charged with conspiring among themselves and with others, both known and unknown to the grand jury. Several of those named co-defendants elected to cooperate with the Government. Petitioner states he told Thrower that he never entered into any agreements with anyone named in the indictment to possess or distribute drugs. Petitioner and Thrower also discussed whether Petitioner could be convicted for conspiring with a Government informant. Thrower advised Petitioner that he "could be convicted of conspiracy whether [he] conspired with an informant or not." (Mot. Vacate, Ex. A, Pet'r's Aff., ECF No. 1801, at 1). Petitioner contends Thrower's statement of the law was inaccurate.

As Petitioner correctly notes, a general rule is that a person cannot enter into a criminal conspiracy when the only other participants are acting as government agents or informants. *See United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967) ("[O]ne who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator."). However, Petitioner has not shown that Thrower made an inaccurate statement about whether *Petitioner* could be convicted of conspiracy. Petitioner was charged with participating in a drug conspiracy with at least twenty-four other co-defendants. Even assuming one of those co-defendants was an informant, and thus was not a co-conspirator, Petitioner still could have been convicted of conspiring with any number of the other co-defendants. *See United States v. Derrick*, 16 F.3d 412, 1994 WL 34691, at *2–4 (4th Cir. 1994) (table) (per curiam) (holding a jury could convict defendant of conspiracy, despite involvement of government informant, because there was evidence that defendant also conspired with others

who were not informants).  Thus, Thrower did not provide faulty advice by telling Petitioner that it did not matter whether he had conspired with *an* informant.[2]

Petitioner's third and final allegation of faulty advice relates to Counts 29 and 30, which related to the shooting of Malik Walker.  Petitioner told Thrower that he did not shoot Walker and that, although he was in the car with Walker's assailants at the time of the shooting, he did not know the shooting was going to occur.  Thrower responded that a jury could convict Petitioner of both counts under an aiding and abetting theory, even though Petitioner did not possess the gun used in the shooting or pull the trigger.

Petitioner argues Thrower misstated the law.  The Court disagrees.  Count 29 alleged a violation of § 924(c), and Count 30 alleged a violation of § 922(g).  A person can be convicted of aiding and abetting those offenses by participating in some stage of the illegal venture with intent to bring about the result; the defendant need not have personally used the gun at issue.  *See, e.g.*, *United States v. Cox*, 591 F. App'x 181, 186 (4th Cir. 2014) (§ 922(g) case); *United States v. Wilson*, 135 F.3d 291, 305 (4th Cir. 1998) (§ 924(c) case).  At least two other participants in the Walker shooting were cooperating with the Government and were likely to provide evidence that would support guilty verdicts under an aiding and abetting theory.  Thrower did not provide ineffective assistance by correctly telling Petitioner that he could be convicted of Counts 29 and 30 even though he himself did not shoot Walker.

In sum, Petitioner has not established a genuine issue as to whether Thrower's legal advice fell below of an objective standard of reasonableness.  Petitioner's first claim fails.[3]

_____
2.  To the extent Petitioner is alleging Thrower told him that a person could be convicted of "conspiring" only with government agents, nothing in the record indicates that all of Petitioner's co-defendants were, at all relevant times, operating as government informants.  If anything, the record demonstrates precisely the opposite.  Even assuming Thrower rendered deficient performance by misstating an abstract legal principle, under the circumstances present here, Petitioner cannot establish a reasonable possibility that, if Thrower had accurately explained *Chase*, Petitioner would have insisted on going to trial on a conspiracy charge that involved at least two dozen confederates—many of whom had agreed to testify against him.

9

## II.     Claim for Failure to Object at Sentencing

Petitioner's second claim relates to the sentence he received for Count 30. In Petitioner's PSR, the probation officer used the United States Sentencing Guidelines to calculate the sentencing ranges for each of Petitioner's charges. For Count 30, the starting point was § 2K2.1(a)(6) of the Guidelines, which set a base offense level of 14. With that offense level, Petitioner's sentencing range for Count 30 would have been 21–27 months. However, because the gun in Count 30 was used to shoot Walker, the cross-referencing provision in § 2K2.1(c)(1)(A) directed the probation officer to § 2X1.1. That provision, in turn, directed the officer to § 2A2.1, the Guidelines provision for attempted murder and assault with intent to commit murder. The probation officer determined that under § 2A2.1(a)(1), the base offense level was 33. The officer then applied a four-level increase because Walker sustained permanent or life-threatening bodily injury. *See* U.S.S.G. § 2A2.1(b)(1)(A) (2012). Finally, the probation officer reduced the offense level to 34 because Petitioner accepted responsibility for his conduct by pleading guilty. *See id.* § 3E1.1. That offense level would have increased the sentencing range to 188–235 months, but the ten-year statutory maximum sentence for Count 30 ultimately led the probation officer to recommend that this Court sentence Petitioner to 120 months in prison on Count 30. *See* 18 U.S.C. § 924(a)(2).

Thrower did not object to that analysis or to any other portion of the PSR. After reviewing the PSR, this Court adopted its Guidelines calculations and sentenced Petitioner to 120 months imprisonment on Count 30. Petitioner now contends that the offense level for Count 30 was calculated improperly and that Thrower provided ineffective assistance by failing to object to the use of those calculations.

---

3.     In light of its conclusion on the merits, the Court need not address the Government's arguments that Petitioner's first claim is procedurally barred.

"The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel." *United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996). A key component of such a claim, of course, is that the Guidelines were actually applied improperly. *See, e.g.*, *United States v. Gibson*, 115 F. App'x 138, 139 (4th Cir. 2004) (per curiam) (holding § 2255 claim based on failure to challenge offense level lacked merit, as the offense level was calculated correctly); *Kennedy v. United States*, No. 2:07-cr-138-PMD, 2011 WL 4008127, at *8 (D.S.C. Sept. 8, 2011) (holding petitioner could not have been prejudiced by counsel's failure to object to career-offender designation under the Guidelines, as that designation had been applied properly). Thus, the Court will address that necessary element of Petitioner's claim.[4]

Petitioner asserts this Court made two types of errors. First, he argues that the offense-level calculation for Count 30 was the product of impermissible double-counting. The Court disagrees. "Double counting occurs when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute. Double counting is generally authorized unless the Guidelines expressly prohibit it." *United States v. Reevey*, 364 F.3d 151, 158 (4th Cir. 2004) (citations omitted). One such prohibition appears in Application Note 4 for § 2K2.4, which is the guideline for § 924(c) offenses: "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of . . . [a] firearm when determining

___

4. "Barring extraordinary circumstances, an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." *United States v. Pregent*, 190 F.3d 279, 283–84 (4th Cir. 1999). The Government argues that Petitioner, in an effort to circumvent that rule and the waivers in his plea agreement, has disguised in ineffective-assistance language what is really a procedurally barred challenge to this Court's application of the Guidelines. The Court need not decide whether Petitioner's second claim is a genuine ineffective-assistance claim. Even assuming it is, for the reasons stated below, its central premise fails.

the sentence for the underlying offense." U.S.S.G. § 2K2.4, cmt. n.4. Pursuant to that instruction, "a court may not apply an enhancement for possession or use of a firearm if the defendant has also been convicted and sentenced under § 924(c) for possession of that firearm in furtherance of a crime of violence." *Reevey*, 364 F.3d at 158.

Petitioner argues that Application Note 4 prohibited the Court from cross-referencing to the attempted-murder guideline or applying its four-level enhancement for permanent or life-threatening bodily injury. The Fourth Circuit and several of its district courts have rejected both parts of this argument. *See, e.g.*, *United States v. Palmer*, 62 F. App'x 489, 491 (4th Cir. 2003) (per curiam) (holding that what is now Application Note 4 "does not prohibit application of the cross reference in § 2K2.1(c)(1)(A)"); *Taylor v. United States*, No. 5:07-cr-324-D-1, 2014 WL 3763764, at *5 (E.D.N.C. Jul. 30, 2014) (holding court did not err by sentencing petitioner for § 924(c)(1)(A)(iii) charge and then, for § 922(g) charge, cross-referencing from § 2K2.1 to § 2A2.1; the cross-referencing did not constitute double-counting), *appeal dismissed*, 585 F. App'x 234 (4th Cir. 2014) (per curiam); *United States v. Terrell*, No. 7:99-cr-610-HMH, 2010 WL 4609111, at *2–3 (D.S.C. Nov. 3, 2010) (holding Application Note 4 does not prohibit application of § 2A2.1(b)(1)(A)'s four-level enhancement, as such enhancement is focused on nature of injury, not on use of weapon), *affirmed on district court's reasoning*, 414 F. App'x 527 (4th Cir. 2011) (per curiam); *Zacarolo v. United States*, No. 1:06CR36-1, 2009 WL 3208334, at *9–10 (M.D.N.C. Sept. 24, 2009) (reaching same conclusion as *Taylor*, in context of claim that counsel was ineffective for not objecting to such a cross-reference), *appeal dismissed*, 376 F. App'x 310 (4th Cir. 2010) (per curiam); *United States v. Terrell*, No. 7:99-cr-610-HMH, 2005 WL 5748478, at *2 (D.S.C. Dec. 9, 2005) (holding that Application Note 4 applies only to sentencing enhancements, not cross-references such as § 2K2.1(c)(1)(A)), *remanded on*

*procedural point*, 194 F. App'x 119 (4th Cir. 2006) (per curiam), *and then affirmed on district court's reasoning*, 223 F. App'x 293 (4th Cir. 2007) (per curiam); *see also United States v. Terrell*, No. 7:99-cr-610-HMH, 2007 WL 1795792, at *1 (D.S.C. June 19, 2007) (holding Application Note 4 does not prohibit application of § 2B3.1(b)(c)(3)'s six-level enhancement, as such enhancement is focused on nature of injury, rather than on use of weapon), *remanded on procedural point*, 266 F. App'x 225 (4th Cir. 2008) (per curiam), *and then affirmed on district court's reasoning*, 300 F. App'x 235 (4th Cir. 2008) (per curiam).  These cases demonstrate the propriety of cross-referencing to § 2A2.1 and then applying the enhancement in § 2A2.1(b)(1)(A) even where the defendant received a separate sentence for a § 924(c) charge. As those cases explain, Application Note 4 does not prohibit use of the § 2K2.1(c)(1)(A) cross-reference, and an enhancement based on the character of the victim's injury is not a weapons-based enhancement.

Second, Petitioner argues that even if it was appropriate to cross-reference to § 2A2.1, the Court applied the wrong base offense level in that guideline.  The base offense level in § 2A2.1 is 33 "if the object of the offense would have constituted first degree murder."  § 2A2.1(a)(1). "[O]therwise," the base offense level is 27.  § 2A2.1(a)(2).  Petitioner argues that because Walker survived the shooting, the lower base offense level should have applied.  Petitioner's argument stems from a misreading of the guideline.  The victim does not have to die in order for the higher base offense level to apply.  Indeed, as § 2A2.1's title—"Assault with Intent to Commit Murder; Attempted Murder"—indicates, the guideline assumes the victim did not die. It would have been nonsensical for Thrower to argue that the guideline for *attempted* first-degree murder should not apply because the victim lived.

13

As there were no improprieties in the guideline calculations for Count 30, the central premise of Petitioner's second habeas claim is flawed. Thrower did not provide deficient assistance, and did not prejudice Petitioner, by declining to make double-counting and survival arguments that would have been clearly unfounded. Accordingly, Petitioner's second habeas claim fails.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Government's Motion to Dismiss is **GRANTED** and, consequently, Petitioner's Motion to Vacate is **DISMISSED** with prejudice. The Court declines to issue a certificate of appealability.[5]

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**January 4, 2016**
**Charleston, South Carolina**

___
5.  A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that the merits of his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484, (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). Petitioner has not satisfied that standard. Accordingly, the Court declines to issue a certificate of appealability. *See* R. 11(a), § 2255 Rules.